IBEW V. CITY OF FARMINGTON

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 611, on behalf of JUANITA GARCIA,**
**Petitioner-Appellant,**
**v.**
**CITY OF FARMINGTON,**
**Respondent-Appellee.**

Docket No. A-1-CA-36035
COURT OF APPEALS OF NEW MEXICO
April 3, 2019

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY, Bradford J. Dalley, District Judge

**COUNSEL**

Youtz & Valdez, P.C., Shane C. Youtz, Stephen Curtice, James A. Montalbano, Albuquerque, NM, for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Brian K. Nichols, Jeremy K. Harrison, Albuquerque, NM, for Appellee.

**JUDGES**

BRIANA H. ZAMORA, Judge. WE CONCUR: JULIE J. VARGAS, Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** BRIANA H. ZAMORA

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

**{1}** The International Brotherhood of Electrical Workers, Local 611 (IBEW), on behalf of Juanita Garcia, appeals separate district court orders granting the City of Farmington's (the City) motions to dismiss and for summary judgment. On appeal, IBEW argues that the district court erred in granting these motions because (1) IBEW

timely filed its petition in district court, challenging the City Council's rejection of an advisory arbitration opinion; (2) the City Council violated the Open Meetings Act (OMA), NMSA 1978, §§ 10-15-1 to -4 (1974, as amended through 2013), and did not cure the violation; and (3) both IBEW and Ms. Garcia have standing to challenge the City's Labor-Management Relations Ordinance (LMRO), Farmington, N.M., Code of Ordinances ch. 21, art. XII, §§ 21-12-1 to -15 (1969, amended 2001). We affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND

**{2}** Ms. Garcia was formerly employed as an operations technician at Farmington Electric Utility System, a City-run power plant in Farmington, New Mexico. After a workplace incident, the City terminated Ms. Garcia. At the time of Ms. Garcia's termination, IBEW was the bargaining representative for employees of Farmington Electric Utility System, and a collective bargaining agreement (CBA) was in effect between IBEW and the City. Pursuant to the CBA's seven-step grievance procedure, Ms. Garcia, with the assistance of IBEW, filed a grievance against the City, claiming the City terminated her without just cause. Ms. Garcia, IBEW, and the City agreed to forego the first three steps of the grievance procedure and proceed to step four, which required them to meet with the City Manager, who ultimately approved Ms. Garcia's termination. IBEW proceeded to the next step in the grievance process and requested advisory arbitration. The arbitrator issued an advisory arbitration opinion (advisory opinion), finding that there was insufficient evidence to justify Ms. Garcia's termination, and recommending that the City reinstate Ms. Garcia and restore her seniority, pay grade, job title, benefits, and full back pay.

**{3}** Under the terms of the CBA, the advisory opinion is subject to approval by the City Council, which may reverse the advisory opinion by unanimous vote. In February 2015, after receiving the advisory opinion, the City Council met with the City Attorney in closed executive session regarding the pending litigation involving Ms. Garcia. In June 2015 the City Council, in accordance with step six in the CBA's grievance process, scheduled "a closed meeting to decide the dispute or difference" based on the arbitrator's findings. The City Council then voted unanimously, in a closed meeting, to reject the award set out in the advisory opinion, after which the Mayor publicly announced the Council's decision in an open meeting. On June 22, 2015, the City Attorney notified IBEW that the City Council had rejected the advisory opinion.

**{4}** On August 21, 2015, IBEW filed a petition in district court claiming that (1) the advisory opinion should be confirmed under the Uniform Arbitration Act (UAA), NMSA 1978, §§ 44-7A-1 to -32 (2001) and the City Council's decision to reject the advisory opinion was in violation of the CBA; (2) the City's rejection of the advisory opinion violated the OMA; and (3) five provisions of the LMRO violated the New Mexico Constitution and the Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-1 to -26 (2003, as amended through 2005), which were reviewable under the Declaratory Judgment Act (DJA), NMSA 1978, §§ 44-6-1 to -15 (1975).

**{5}** The City filed a motion to dismiss, which the district court granted in part and denied in part. The district court concluded that it did not have subject matter jurisdiction to review the City's rejection of the advisory opinion under the UAA, Rule 1-074 NMRA, or Rule 1-075 NMRA. IBEW does not appeal this portion of the district court's order on the City's motion to dismiss. The district court further concluded that it had jurisdiction over contractual matters arising out of alleged violations of the CBA and over the alleged OMA violations. The district court dismissed the DJA claims, concluding that neither IBEW nor Ms. Garcia had standing to challenge the LMRO provisions.

**{6}** The parties subsequently filed cross-motions for summary judgment on Plaintiff's remaining claims. The district court denied IBEW's motion and granted summary judgment in favor of the City, concluding IBEW untimely filed its CBA contractual claim. As to the OMA claim, the district court concluded that the City Council violated the OMA by voting to reverse the advisory opinion while in closed session. Nevertheless, the district court concluded that IBEW had no viable OMA claim because the City Council had cured its OMA violation and even had it not, IBEW failed to provide written notice of the violation to the City Council as required by the OMA. IBEW appeals the grant of summary judgment to the City on its CBA and OMA claims and the dismissal of its DJA claim challenging the LMRO provisions.

## DISCUSSION

### I. The District Court's Grant of Summary Judgment on IBEW's CBA and OMA Claims

**{7}** IBEW argues that the district court erred in granting summary judgment to the City on its claims under OMA and the CBA. "[I]t is appropriate for the district court to grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 16, 416 P.3d 264 (internal quotation marks and citation omitted). This Court views the facts in the "light most favorable to the party opposing summary judgment and draw[s] all reasonable inferences in support of a trial on the merits." *Id.* ¶ 14 (internal quotation marks and citation omitted). "We review the district court's grant of summary judgment de novo." *Id.* To the extent it is necessary for this Court to interpret an unambiguous contract, we also do so de novo and "effectuate the intent of the parties by adopting a reasonable construction of the usual and customary meaning of the contract language." *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 (internal quotation marks and citation omitted); *see Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 19, 139 N.M. 201, 131 P.3d 51 ("[A] collective bargaining agreement is a contract between a labor organization and the employer." (internal quotation marks, and citation omitted)).

### A. IBEW's CBA Claim Was Timely Filed

**{8}** The district court entered judgment in favor of the City dismissing the CBA contractual claim, concluding that IBEW did not timely file its petition in district court.

IBEW contends that the district court erroneously concluded its petition was untimely under the terms of the CBA.

**{9}** In contrast, the City argues that the CBA does not control the district court's jurisdiction or the timeliness of the petition. Instead, the City claims that either Rule 1-074 or Rule 1-075 apply, both of which govern the district court's jurisdiction in appeals from administrative agencies. *See* Rule 1-074(A) ("This rule governs appeals from administrative agencies to the district courts when there is a statutory right of review[.]"); Rule 1-075(A), (B) ("An aggrieved party may seek review of a final decision or order of an agency" when there is no statutory right to appeal). Both Rule 1-074(E) and Rule 1-075(D) require an appeal from an agency "[to] be filed in the district court within thirty (30) days after the date of the final decision or order." IBEW does not claim a statutory right to appeal and neither party directs us to a statutory provision that governs IBEW's right to appeal. Rule 1-074, therefore, does not apply; and even if it did, the petition is untimely under Rule 1-074(E). Moreover, to the extent IBEW seeks review of an agency decision for which there is no statutory right of review, IBEW's petition was untimely filed under Rule 1-075. Thus, the district court correctly concluded that the petition was untimely under either rule. Nonetheless, to the extent IBEW's petition raises a claim that the City breached the CBA, as the district court interpreted the petition, we turn to the CBA to determine the timeliness of IBEW's petition.

**{10}** IBEW asserts that the district court incorrectly used calendar days, as opposed to business days, to determine whether IBEW's petition was timely filed. We agree. Under the CBA, "either [p]arty may proceed to appeal by filing their case in the appropriate [c]ourt within forty-five (45) days of receipt of the City Council['s] decision." We are called on to determine whether the CBA requires the filing of an appeal within forty-five calendar days or forty-five business days. We therefore look to the language of the CBA.

**{11}** The CBA provides in relevant part: "The term 'days' as used in this Section shall mean the days Mondays through Fridays inclusive and excludes Saturdays, Sundays, and observed holidays on which the City . . . is closed." The district court granted summary judgment in favor of the City using calendar days, as opposed to business days, thereby concluding IBEW filed the petition outside of the required forty-five-day deadline prescribed by the CBA. The unambiguous language in the CBA requires a party to file an appeal within forty five business days, not calendar days, and by this Court's calculation IBEW filed its petition within this forty-five-day period. We reverse the district court's grant of summary judgment in the City's favor on this issue and remand for the district court to consider the merits of IBEW's contractual claim. *See Ottino v. Ottino*, 2001-NMCA-012, ¶ 5, 130 N.M. 168, 21 P.3d 37 (holding that district courts have a "constitutionally vested authority to enforce contracts").

## B.    The OMA Claim

**{12}** As part of its petition, IBEW alleged that the City Council violated the OMA by voting on the advisory opinion in closed session. The district court ultimately concluded

that any OMA violation had been cured and therefore granted the City summary judgment dismissing this claim. Although IBEW asserts that it alleged no separate OMA violation, it nevertheless argues that the district court erred in concluding that the City cured its OMA violation. The City responds that (1) the vote to reject the advisory opinion was not required to be taken in an open meeting; (2) any violation of the OMA was cured when the Mayor publicly announced the City Council's vote; and (3) IBEW failed to provide notice as required by OMA to bring such a claim.

**{13}** The purpose of OMA is to give the public "the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." Section 10-15-1(A). The City Council was required to comply with OMA, which provides, in relevant part:

> The formation of public policy or the conduct of business by vote shall not be conducted in closed meeting. All meetings of any public body except the [L]egislature and the courts shall be public meetings, and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings.

*Id.*; *see also* Section 10-15-3(A) (providing that no action taken by an entity subject to the OMA shall be valid unless done in compliance with Section 10-15-1(A)). There are exceptions to this general requirement and the City directs us to three of them: the exception for limited personnel matters, deliberations by a public body in connection with an administrative adjudicatory proceeding, and meetings subject to the attorney-client privilege pertaining to threatened or pending litigation. *See* §10-15-1(H)(2), (3), and (7). We see nothing in these exceptions that would permit the City Council to vote to reject the advisory opinion in a closed meeting. The City further claims that the CBA mandates a closed meeting in providing that, "the City Council shall schedule a closed meeting to *decide* the dispute or difference based upon the finding provided by the advisory arbitrator." (Emphasis added.) However, the above-quoted language of the CBA does not prohibit a *vote* from being taken in an open meeting, as procedurally required by OMA. The OMA required the City Council to vote in an open meeting to reject the advisory opinion, and its failure to do so constituted a violation of the OMA, *see* § 10-15-1(H)(2), as the district court concluded.

**{14}** The district court, however, concluded that the City cured its violation of the OMA. *See Kleinberg v. Bd. of Educ. of Albuquerque Pub. Sch.*, 1988-NMCA-014, ¶ 30, 107 N.M. 38, 751 P.2d 722 ("[P]rocedural defects in the [OMA] may be cured by taking prompt corrective action."). The City asserts that it cured any OMA violation because the Mayor subsequently announced the result of the closed meeting vote, in an open meeting. The meeting minutes reflect that "Mayor Roberts announced that during the closed meeting the [City] Council unanimously rejected the arbitrator's advisory opinion and award from the Juanita Garcia vs. City of Farmington arbitration hearing." We fail to see how this cured the OMA violation because the OMA required the City to vote in an open meeting to cure its violation, not merely announce its decision after the closed meeting. *See* § 10-15-1(I)(1); *see also Kleinberg*, 1988-NMCA-014, ¶ 30 (concluding

the local board successfully cured its prior error when it subsequently held an open public meeting and held a vote on the matter at issue). In this regard, the district court erred.

**{15}** The City contends that even if it violated OMA and failed to cure its violation, Section 10-15-3(B) proscribed IBEW's claim because IBEW failed to provide notice of the OMA violation to the City. IBEW was permitted to file its OMA claim in the district court only after providing the City with "written notice of the claimed violation . . . and [only after the City] has denied or not acted on the claim within fifteen days of receiving [the notice]." Section 10-15-3(B). IBEW does not dispute that it failed to provide written notice to the City of the alleged OMA violation and thus any claim for an independent OMA violation must fail. We affirm the district court's grant of summary judgment to the City on IBEW's OMA claim based on its failure to notify the City of the OMA violation.

**{16}** IBEW additionally argues that, even if it has no independent OMA claim, the City's OMA violations are nonetheless evidence relevant to IBEW's remaining CBA claim. We decline to resolve this issue. *See Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 42, 138 N.M. 189, 118 P.3d 194 ("[B]ecause we cannot know what will transpire on remand, it would be premature for us to act on [the plaintiff's] request for rulings on these issues.").

## II.     The District Court's Dismissal of IBEW's and Ms. Garcia's DJA Challenge to the LMRO for Lack of Standing

**{17}** Under the DJA, IBEW and Ms. Garcia challenge five LMRO provisions that  they contend are unconstitutional, in violation of the PEBA, and not entitled to grandfather status under PEBA. The challenged LMRO provisions relate to: (1) the definition of the bargaining unit; (2) the City Manager's power to appoint an interim board member during a temporary or permanent absence of a member of the labor-management relations board; (3) mandatory subjects of bargaining; (4) the prohibition against using City property, time, or money for union business; and (5) the prohibition of employee organizations representing City employees from assisting or endorsing issues or candidates in municipal elections. *See* Farmington, N.M., Code of Ordinances ch. 21, art. XII, §§ 21-12-3, 21-12-4(a)(4) 21-12-9(a), 21-12-11(b)(10), 21-12-11(c). Upon the City's motion, the district court dismissed the DJA challenge to the LMRO under Rule 1-012(B)(1) NMRA, concluding that IBEW and Ms. Garcia lacked standing. IBEW and Ms. Garcia argue that the district court improperly dismissed their DJA challenge to the LMRO provisions and that both IBEW and Ms. Garcia have standing to challenge the LMRO provisions.

### A.     Legal Standard for Standing

**{18}** "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *N.M. Gamefowl Ass'n v. State ex rel. King*, 2009-NMCA-088, ¶ 12, 146 N.M. 758, 215 P.3d 67 (internal quotation

marks and citation omitted). Whether a party has standing is a question of law that we review de novo. *See ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 6, 144 N.M. 471, 188 P.3d 1222.

**{19}** The general rule in New Mexico is that, because our state constitution does not require it, standing is not jurisdictional. *See id.* ¶ 9. However, "[w]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." *Id.* ¶ 9 n.1 (internal quotation marks and citation omitted). IBEW challenges the LMRO provisions under the DJA. The DJA "grants jurisdiction to the district courts to determine questions of the construction or validity of local laws and municipal ordinances." *Am. Fed'n of State, Cty. & Mun. Emps. (AFSCME) v. Bd. of Cty. Comm'rs*, 2016-NMSC-017, ¶ 11, 373 P.3d 989. A district court only has jurisdiction to adjudicate "cases of actual controversy" under the DJA. *Id.* ¶¶ 12, 15, 31 (holding that a party must satisfy standing as a jurisdictional prerequisite in order to bring a claim under the DJA). An "actual controversy exists only where a plaintiff satisfies justiciability requirements," including the requirement that the plaintiff demonstrate that it has standing. *Id.* ¶¶ 15, 32.

**{20}** Standing requires a party to establish that "(1) they are directly injured as a result of the action they seek to challenge; (2) there is a causal relationship between the injury and the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *ACLU of N.M.*, 2008-NMSC-045, ¶ 1; *see id.* ¶ 10 ("[A]t least as a matter of judicial policy if not of jurisdictional necessity, our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of the case."). Relevant to this Court's inquiry is the injury in fact requirement, which requires litigants to demonstrate that "they are directly injured as a result of the action they seek to challenge." *AFSCME*, 2016-NMSC-017, ¶ 32. To establish a direct injury for standing purposes, a party must show that he or she is "imminently threatened with injury" or "faced with a real risk of future injury, as a result of the challenged action or statute." *Id.* (internal quotation marks and citation omitted). Hypothetical possibilities of injury will not meet this standard. *Id.*

## B. IBEW and Ms. Garcia Lack Standing to Challenge the LMRO Provisions

**{21}** IBEW claims it has standing in its own right to challenge the five LMRO provisions and, additionally, that Ms. Garcia has standing of her own to make such a challenge. First, in support of IBEW's contention that it has standing to challenge the LMRO provision, it asserts that "IBEW is being regulated by those provisions and being harmed by those provisions, to the extent that they are found to either violate PEBA or constitutional law." The City counters that IBEW failed to preserve its assertion that it has standing in its own right. Despite the City's claim to the contrary, IBEW preserved its argument in its response to the City's motion to dismiss. Nevertheless, we are not persuaded that IBEW has established standing in its own right. IBEW's assertions of injury are purely hypothetical because it failed to allege any facts in its petition that any of the City's actions implicated the five provisions challenged by IBEW. For example,

IBEW alleged nothing about what specific employees are incorrectly excluded from the bargaining unit, whether the City Manager has or is about to appoint an interim board member, whether the City failed to bargain over a mandatory subject of bargaining, whether the City has prevented an employee from using the City's property for union business, or whether IBEW was prevented from endorsing or assisting candidates in a municipal election. For this reason, IBEW has not shown an injury or threatened injury and thus has not met its burden to establish it has standing, in its own right, to challenge the LMRO. *See ACLU of N.M. v. City of Albuquerque*, 2007-NMCA-092, ¶ 9, 142 N.M. 259, 164 P.3d 958 (concluding there was no standing where the plaintiffs "have not demonstrated that they have suffered an injury in fact or that they are in imminent harm of suffering an injury in fact as a result of the [o]rdinance"), *aff'd*, 2008-NMSC-045, ¶ 2; *Id.* ¶ 15 (requiring the plaintiff to demonstrate "an injury in fact" or "imminent threat of an injury" to mount facial constitutional challenge to ordinance); *see also AFSCME*, 2016-NMSC-017, ¶¶ 15, 33 (concluding that the plaintiff has not demonstrated standing because it "asserts only the possibility of a hypothetical injury").

**{22}** IBEW next argues that "even were the district court correct to limit IBEW's standing to standing of its member, its finding that [Ms. Garcia] lacked the standing to challenge the LMRO is error." As stated, however, the petition is completely devoid of an allegation of injury or threat of injury as it relates to any conduct by the City and the five challenged LMRO provisions. Additionally, IBEW fails to establish a nexus between any of the challenged LMRO provisions and Ms. Garcia's termination by the City. There are no facts alleged that establish Ms. Garcia has standing to challenge the five LMRO provisions identified in the petition. *See City of Sunland Park v. Santa Teresa Servs. Co.*, 2003-NMCA-106, ¶ 39, 134 N.M. 243, 75 P.3d 843 (holding that "[a] party's standing . . . depends on its factual and legal connection to the issue it wishes to litigate"). Moreover, Ms. Garcia's alleged injury resulted from the City Council's rejection of the advisory opinion. Yet, in its petition, IBEW failed to challenge the LMRO's impasse provisions, which permit non-binding arbitration. *See* Farmington, N.M., Code of Ordinances ch. 21, art. XII, § 21-12-15. Even if Ms. Garcia had standing to challenge the five LMRO provisions identified in the petition, which she does not, the failure of those provisions would have no effect on the LMRO impasse provisions. *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 35, 125 N.M. 401, 962 P.2d 1236 (holding that the two-part test required to obtain grandfather status under PEBA "applies to specific provisions of a public employer's [ordinance] rather than the [LMRO] as a whole"); *see also City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 22, 141 N.M. 686, 160 P.3d 595 (holding that binding arbitration as an impasse resolution procedure was unnecessary for grandfather status under PEBA and that advisory arbitration was permissible). Ms. Garcia has not established standing to challenge the LMRO provisions. Consequently, IBEW has not established associational standing on behalf of Ms. Garcia. *See ACLU of N.M.*, 2008-NMSC-045, ¶ 30 (providing that an association "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit" (internal quotation marks and citation omitted)).

**{23}**    Thus, we affirm the district court's dismissal of the DJA claims based on IBEW and Ms. Garcia's failure to establish an "actual controversy," which is a prerequisite to any cause of action brought under the DJA. *See AFSCME*, 2016-NMSC-017, ¶ 15.

**CONCLUSION**

**{24}**    For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**{25}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JENNIFER L. ATTREP, Judge**